A07A0174. FOSTER v. THE STATE.
(649 SE2d 322)

MIKELL, Judge.

After a jury trial, David Gather Foster was convicted of one count of aggravated child molestation and three counts of child molestation. Following the denial of his motion for new trial, Foster filed his pro se appeal, challenging the sufficiency of the evidence, the jury charges, and the effectiveness of his trial counsel. Finding no error, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the evidence shows that 14-year-old S. B.[2] testified that she began to get to know her father, appellant Foster, when she was 11 years old; that on the evening in question in June 2002, she wanted to spend the night with her dad because he told her he was dying of cancer; that they arrived at the trailer where Foster was living, which belonged to Lila Swanson, at about midnight; and that when she was preparing to go to sleep, Foster lay down on her bed and "french kissed" her, sticking his tongue in her mouth. Additionally, Foster instructed her to remove her clothing then began touching her breasts with his hands and attempted to penetrate her vagina with his penis. S. B. further testified that Foster sucked on her breast, leaving a mark on it. S. B. recalled that on the next day, her mother took her to visit her father and Swanson and that after her mother left, Foster made her perform oral sex on him. S. B. explained that she

---

[1] (Citations omitted.) Carey v. State, 281 Ga. App. 816, 817 (637 SE2d 757) (2006).
[2] S. B. was 13 at the time of the abuse.

did not tell her mother about the incidents because she loved her father and did not want him to get in trouble. Instead, she later reported the abuse to Mitzi Ballad, her legal guardian and foster parent.

Ballad testified that in October 2002, S. B. had been living with her for about a month; that during the early morning before school on October 10, 2002, S. B. appeared to be troubled so she asked her repeatedly what was bothering her; and that S. B. eventually told her that her father had intercourse with her at his home on two or three occasions during the summer. Ballad stated that S. B. was shaking and crying and was very reluctant to discuss the abuse, and S. B. finally told her that she did not want to get her father in trouble because she loved him and did not want to jeopardize their relationship. Ballad immediately called S. B.'s psychologist and was told to take S. B. to Crimes Against Children in Cobb County, where they were referred to Bartow County, where the incident had occurred.

Investigator Nancy Ray Norris of the Bartow County Sheriff's Department testified that she interviewed S. B. outside of the presence of Ballad and recorded the interview on videotape, which was played for the jury. Norris testified that she also interviewed S. B.'s mother, Elizabeth Moon; S. B.'s psychologist; and the residents of the trailer where the incident occurred. She even attempted to interview Foster over several months, but he did not show up for their appointments. Norris arrested Foster on January 14, 2003.

Moon testified that in June 2002, she drove S. B. to meet Foster, despite a court order that S. B. have no contact with him, because Foster had been telling S. B. that he was dying of cancer; that after S. B. and Foster talked for about 15 minutes, they both begged and pleaded for Moon to allow S. B. to spend one night with her father; and that she consented. According to Moon, S. B. and Foster called her that night, and Foster called several times the next morning before bringing S. B. to Moon's father's house. Moon also testified that on the afternoon of the day after S. B. spent the night with Foster, she and S. B. visited Foster and Swanson, but no one reported any inappropriate conduct to her. On cross-examination, Moon acknowledged that the incident may have occurred on June 5 and that she took S. B. to her father's house on the following day but maintained that she stayed with her during the entire visit.

1. In his first enumerated error, Foster argues that the evidence presented as to each of his convictions was insufficient. We disagree.

A person who does any immoral or indecent act to or with a child under the age of 16 years with the intent to arouse or satisfy his own

or the child's sexual desires commits child molestation.[3] "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."[4] As the evidence supports the finding that Foster attempted to penetrate S. B.'s vagina with his penis, touched her breasts with his hands and his mouth, and told her to perform oral sex on him, we find that it was sufficient to authorize the jury's verdict as to each of his convictions.

Foster points to inconsistencies between S. B.'s in-court testimony and her videotaped statement, as well as those between S. B.'s testimony and that of her mother, to support his claim that his convictions should be reversed. However, with respect to potential inconsistencies, we reiterate that as an appellate court, we "determine[ ] only the legal sufficiency of the evidence adduced below and [do] not weigh the evidence or assess the credibility of the witnesses. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the verdict will be upheld."[5] Foster makes much of the fact that there was no corroborating evidence, but it is not necessary to find corroborating evidence to uphold a conviction of aggravated child molestation or child molestation as the victim's testimony, in and of itself, is sufficient to authorize a conviction.[6] Again, the victim's credibility is a matter for the jury's assessment, not this Court's.[7]

2. Foster argues that the trial court erred when it read to the jury the full text of the statutes defining child molestation and aggravated child molestation, instead of tailoring its charge to the manner of the commission of the crimes alleged in the indictment. However, Foster did not raise this argument in his motion for new trial, amended motion for new trial, or at the hearing on the motion for new trial. Therefore, it is waived.[8] Additionally, "as there was no objection to the court's charge below, we cannot consider appellant's contention that the charge was erroneous for the first time on appeal."[9]

3. Foster asserts several grounds of ineffectiveness against his trial counsel: (a) he failed to file a motion in limine to exclude testimony about the court order against him or to object to Moon's

---

[3] OCGA § 16-6-4 (a).

[4] OCGA § 16-6-4 (c).

[5] (Citations omitted.) *Phillips v. State*, 284 Ga. App. 683, 684 (1) (a) (644 SE2d 535) (2007).

[6] See *Morgan v. State*, 191 Ga. App. 279 (381 SE2d 427) (1989) (no corroboration required in aggravated child molestation cases); *Tadic v. State*, 281 Ga. App. 58, 59 (2) (635 SE2d 356) (2006) ("Georgia law does not require corroboration of a child molestation victim's testimony").

[7] See *Frady v. State*, 245 Ga. App. 832 (1) (a) (538 SE2d 893) (2000).

[8] *Keanum v. State*, 212 Ga. App. 662, 663 (1) (442 SE2d 790) (1994).

[9] Id. See also *Scieszka v. State*, 259 Ga. App. 486, 488 (2) (578 SE2d 149) (2003).

testimony; (b) he failed to move for a mistrial or ask for curative instructions after the investigating officer made prejudicial comments about Foster; (c) he failed to reserve objections to the jury charges and to request a charge that the dates in the indictment were material to the offense; (d) he failed to object to S. B.'s videotaped statement; and (e) he failed to submit evidence of S. B.'s prior molestations by other persons.

> [I]n order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, there would have been a different outcome at trial.[10]

Furthermore, "[a] court . . . is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one."[11] "We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[12] Because Foster has failed to make the required showings, this enumeration fails.

(a) Foster argues that his trial counsel should have moved in limine to exclude, or at the very least, should have objected to Moon's testimony that there was a court order prohibiting him from having contact with S. B. because it constituted improper character evidence. Foster maintains that this error cannot be deemed harmless because it allowed the jury to speculate as to the reason he was forbidden to have contact with his daughter.

When asked his reasons for failing to attempt to exclude this testimony, trial counsel testified that he thought the order "played in our hands a little bit." Counsel explained that his strategy at trial was to prove that S. B. was not with her father when the incidents were alleged to have occurred and should not have been pursuant to the court order. He added that he attacked S. B.'s credibility by showing the inconsistencies in her testimony and by introducing the testimony from two witnesses that S. B. was not with her father when he picked them up in his shuttle on the morning of June 6, despite her testimony that she was with him.

---

[10] *Butler v. State*, 273 Ga. 380, 384 (10) (541 SE2d 653) (2001).

[11] (Citation and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

[12] (Citation and punctuation omitted.) *Carey*, supra at 818 (2).

"It is well established that trial counsel's decisions on matters of tactics and trial strategy, even if unwise, do not amount to ineffective assistance of counsel."[13] However, even if we were to conclude that trial counsel's failure to attempt to exclude the evidence was deficient, Foster has not shown how he was harmed. He postures that from the jury's perspective, the fact that there was an order prohibiting him from seeing his daughter increased its belief that he had the propensity to molest her, but "[h]arm cannot be shown by mere speculation and conjecture unsupported by the record."[14] In this case, Foster called a juror as a witness at his hearing on the motion for new trial. However, the juror was not asked about this issue. Thus, Foster had the opportunity to establish that the jury's knowledge of the court's order prejudiced him but did not do so. Accordingly, he has failed to establish ineffectiveness on this ground.

(b) Next, Foster argues that trial counsel should have moved for a mistrial or asked for curative instructions after the following colloquy between trial counsel and Investigator Norris regarding her investigation:

Q. [Y]ou're indicating to the jury that if Mr. Foster comes in and says, I didn't touch my daughter, you would have said, okay; that's it?

A. No, sir. That's not what I'm saying. I'm just saying he didn't come in to be interviewed. I explained to him that I needed to speak with him in regards to his daughter. He said he was willing to come in. He doesn't show up. I made a diligent effort to locate Mr. Foster and wasn't able to, and at that time, on December the 6th, I went ahead and took state warrants for Mr. Foster. Mr. Foster wasn't located until January the 14th at that residence hiding in the closet.

Foster contends that the reference to the fact that he was hiding in the closet was improper prejudicial character evidence. In support of his contention, he relies on *Richardson v. State*,[15] but that case is inapposite. In *Richardson*,[16] we held that the trial court erred when it permitted a question alluding to the fact that the defendant was found under his bed on prior arrests because it impermissibly placed his character in evidence.[17] In this case, there was a reference to

---

[13] (Footnote omitted.) *Rose v. State*, 258 Ga. App. 232, 236 (2) (b) (573 SE2d 465) (2002).

[14] *Evans v. State*, 233 Ga. App. 879, 880 (2) (506 SE2d 169) (1998).

[15] 199 Ga. App. 10 (403 SE2d 877) (1991).

[16] Supra.

[17] Id. at 11-12 (2).

Foster hiding under his bed, but counsel did not allude to any prior arrest, which was the basis for the reversal of the conviction in *Richardson*.[18] Norris's statement was part of the res gestae of the arrest, and "evidence as to the time when and the place where arrested, the manner of the arrest, . . . and all the circumstances connected with the arrest, are proper matters to be submitted to the jury to be weighed by them for what they are worth."[19] Therefore, because the evidence was admissible, counsel cannot be found ineffective for failing to object thereto.[20]

(c) Foster maintains that trial counsel was also ineffective because he failed to reserve objections to the jury charges and to request "essential" charges. "Failure to object to a court's charge . . . is not ineffective assistance where the appellant does not show how this prejudiced his case[,]"[21] which Foster does not show.

Foster argues that trial counsel should have requested a jury charge that the alleged dates in the indictment were a material element of the offense that must be proven by the state. As this alleged error was not raised in the amended motion for new trial or at the hearing, it is waived. See Division 2. Nonetheless, we point out that where the indictment alleges that a crime took place within a certain time frame, "the [s]tate is not, as a general rule, restricted to proof of the date alleged in the indictment, but is permitted to prove its commission on any date within the statute of limitations[,]"[22] and the statute of limitation on child molestation is seven years.[23]

In this enumeration of error, Foster also makes reference to the defense of alibi. In his reply brief, Foster argues specifically that trial counsel should have requested a charge on alibi and that the trial court should have given the charge even absent a request to do so because it was Foster's sole defense.

At the hearing on the motion for new trial, Foster testified that he was incarcerated on the evening of June 6, not from June 1 through 5, or on the morning of June 6. The indictment alleges that these offenses were committed between June 1 and June 6. Thus, had trial counsel offered evidence that Foster was incarcerated on the evening of June 6, that evidence would not have shown that Foster could not

---

[18] Supra.

[19] (Citations and punctuation omitted.) *Scott v. State*, 172 Ga. App. 725, 726 (1) (324 SE2d 565) (1984). See *Bixby v. State*, 234 Ga. 812, 813 (1) (218 SE2d 609) (1975).

[20] See *Hunter v. State*, 281 Ga. 526, 529 (2) (b) (640 SE2d 271) (2007).

[21] *Gomillion v. State*, 236 Ga. App. 14, 18 (3) (c) (512 SE2d 640) (1999). Accord *Bogan v. State*, 249 Ga. App. 242, 245 (2) (d) (547 SE2d 326) (2001).

[22] (Citations omitted.) *Ledesma v. State*, 251 Ga. 885 (1) (a) (311 SE2d 427) (1984).

[23] OCGA §§ 17-3-1 (b), (c); 16-6-4 (b) (1) (sentence for child molestation) and (d) (1) (sentence for conviction of aggravated child molestation).

have been present when the crimes alleged in the indictment were committed. "Where the evidence supporting an alibi defense does not show the impossibility of the defendant's presence at the crime scene during the crime's commission, the failure of the court to charge the law of alibi is not error."[24] Thus, the trial court was not required to give the charge. Moreover, if trial counsel had requested the charge, the trial court would have been authorized to refuse to give the charge because it was not appropriate. Consequently, this argument, too, does not support Foster's claim of ineffectiveness.

(d) Next, Foster argues that trial counsel was ineffective because he did not request that the court determine the reliability of S. B.'s videotaped statement or object to its admission. This claim of ineffectiveness also fails.

Foster is correct that under the Child Hearsay Statute, OCGA § 24-3-16,

[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

However, if after both parties have rested, the record contains evidence which would support such a finding, the statutory requirement is met.[25]

In determining whether the statements are inherently reliable, the factors which the court may consider, when applicable, include but are not limited to the following: (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at

---

[24] See *Evans v. State*, 240 Ga. App. 297, 299 (3) (523 SE2d 103) (1999).
[25] See *Gregg v. State*, 201 Ga. App. 238, 239 (3) (a) (411 SE2d 65) (1991).

the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child. These factors are to be applied neither in mechanical nor mathematical fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness. Nor does the fact that the statement is made days, weeks, or even several months after the alleged incident, in and of itself make the statement unreliable. Further, the trial court has broad discretion in determining the admissibility of child hearsay evidence.[26]

Having reviewed the entire record, this Court finds that the trial court correctly determined that S. B.'s statement was sufficiently reliable to justify admission into evidence. S. B.'s statement was made spontaneously to her foster parent when she was 13 years old. Ballad testified that S. B. was upset when she told her about the incident. There was no evidence that S. B.'s statement was coerced or that she stood to gain anything from the statements as she repeatedly expressed her love for her father and her desire not to get him into trouble. Nor was there evidence that S. B. was under the influence of drugs or alcohol. Although S. B. admitted during her in-court testimony that she may have been confused about all of the details of the timing of the event and acknowledged inconsistencies between her in-court testimony and the statement, these were issues going to the weight and credibility of the evidence, not its admissibility.[27] Additionally, the record shows that Foster's trial counsel emphasized the inconsistencies during his cross-examination of S. B. Therefore, the trial court's admission of the statement was not an abuse of discretion and any objection thereto would have been unfounded.

(e) Finally, Foster claims that trial counsel's failure to submit evidence of S. B.'s prior molestations by other persons rendered counsel ineffective because the evidence bore directly on the ultimate issue in the case. We disagree.

Foster contends that someone else was implicated during the state's investigation of the allegations in this case, but there was no evidence in the record to support this claim. Although at the hearing on the motion for new trial, Foster's counsel asked trial counsel

---

[26] (Citations and punctuation omitted.) *Kight v. State*, 242 Ga. App. 13, 15-16 (1) (528 SE2d 542) (2000).
[27] Id. at 16 (1).

whether he was aware of any prior allegations of child molestation made by S. B., and trial counsel indicated that he had heard about prior allegations, Foster has not shown how the failure to introduce this evidence at trial rendered his trial counsel's performance deficient. Accordingly, this claim fails.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JULY 3, 2007 — 

David G. Foster, *pro se.*

T. Joseph Campbell, *District Attorney,* Sharon M. Fox, *Assistant District Attorney,* for appellee.