## A08A1704. GILFORD v. THE STATE.
(673 SE2d 40)

ANDREWS, Presiding Judge.

Shannel Gilford appeals after a jury found her guilty of residential mortgage fraud. Gilford contends that the evidence was insufficient to support the verdict, that the trial court erred in admitting and in failing to admit certain evidence and testimony, and also that the trial court erred in failing to declare a mistrial after remarks made during the prosecutor's closing argument. After reviewing the record, we conclude there was no error and affirm.

Shannel Gilford, Andrea Johnson, and Shirlene Smith, the three co-defendants at trial, were accused of residential mortgage fraud in connection with a mortgage application. The indictment alleged that, in filling out the loan application, Smith falsely stated that none of

the $13,000 down payment was borrowed. The State contended that because Smith did not have the money for the down payment, Gilford, Johnson, and Smith devised a plan whereby Gilford would give the money to Smith prior to closing, Johnson would repay Gilford, and Smith would repay Johnson.

The evidence at trial, taken in the light most favorable to support the verdict, was that Johnson and Smith were friends, and Johnson had met Gilford approximately three and a half years earlier. Gilford was working as a home loan consultant for Countrywide Home Loans when Smith applied to Countrywide for a residential home loan. Countrywide turned down the loan, however, because of Smith's debt-to-income ratio and insufficient funds to close.

Smith submitted another residential loan application to New Century Mortgage Corporation. Although Gilford did not work for New Century Mortgage, the lawyer whose firm prepared the closing documents for the sale stated that someone from her firm talked with Gilford "in coordinating some parts of the closing." The law firm paralegal testified that Gilford was the loan officer responsible for the sale. The sale was for $130,000 with a loan of $117,000 and a down payment of $13,000. On her application with New Century, Smith stated that she had not borrowed the money necessary for the down payment on the loan. New Century approved the loan and the house closed. Smith subsequently defaulted on the note.

One of the investigators testified that in tracing the $13,000 deposited into Smith's account prior to closing, he discovered that $13,000 had been withdrawn from Gilford's account on March 28, 2006. The next day, there were three different deposits made at three separate bank branches into Smith's account. The deposits totaled $13,000. Smith then issued an official check made payable to Johnson for $13,000. On the same day as the closing, Johnson issued a check to Gilford for $13,500. Gilford deposited the money into separate accounts — $11,500 in hers and $2,000 in a joint account with her husband. The investigator testified that he determined that the cashier's check at closing was not Smith's money.

The State introduced evidence of a promissory note made in favor of Johnson for $10,000 with Smith as the grantor and secured by the house Smith had just bought. The promissory note was never executed. Johnson said that after closing she realized that asking to have the promissory note drawn up was a mistake. Johnson said that she and Smith had discussed a seller financed second mortgage but did not go through with it. The State then produced an e-mail from Johnson to Smith stating:

Let me know what additional information you need so that I can have Shannel explain that information to you. I can

only state that as per the closing on the property you did not have the money for the down payment and[,] as it was explained to you at that point in time[,] the 10k would be worked into your refinance option.

Johnson testified that before Smith bought the house, she agreed to give Smith a $14,500 decorator's allowance and paid her the money after the closing. She said that Smith told her to write one check for $13,500 to Gilford and the remaining $1,000 to her.

When officers went to serve the arrest warrant for Gilford, a man answered the door and told them that Gilford was out of town. Officers entered the house to search and found Gilford upstairs hiding under a bed.

Gilford testified in her own defense and stated that after Smith's loan application was denied by Countrywide, Smith came to her and asked to borrow $13,000. Gilford said that Smith told her that the money was to be used as a refundable earnest money deposit for the house. Gilford introduced into evidence a promissory note from Smith dated March 15, 2006, for a period of six months at $500 interest. Gilford said that Smith paid her the $13,500 on April 25, 2006.

Gilford testified that when officers came to arrest her it was 6:00 a.m. and they pounded on the door, frightening her. She said she hid under the bed because she was afraid that someone was breaking into the house. She also stated that after her case was transferred to DeKalb County, she voluntarily turned herself in to police.

1. The evidence was sufficient to support the verdict. On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

OCGA § 16-8-102 provides in pertinent part:

A person commits the offense of residential mortgage fraud when, with the intent to defraud, such person: (1) Knowingly makes any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process; (2) Knowingly uses or facilitates the use of any deliberate misstatement, misrepresentation, or omission, knowing the same to contain a misstatement, misrepresen-

tation, or omission, during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process; (3) Receives any proceeds or any other funds in connection with a residential mortgage closing that such person knew resulted from a violation of paragraph (1) or (2) of this Code section; (4) Conspires to violate any of the provisions of paragraph (1), (2), or (3) of this Code section. . . .

Gilford argues that there was no evidence that she knowingly made any deliberate misstatement or misrepresentation during the loan application process. The State responds, and we agree, that the jury could find Gilford guilty of making deliberate misstatements and misrepresentations because she was a party to the crime.[1]

Gilford also claims that there was no evidence that "[s]he knew about the second loan and should have disclosed her personal loan to Smith in her capacity in dealing with the closing attorney's office," or that "she directly dealt with the closing attorney's office with regard to the second loan."

The transcript shows otherwise. The law firm paralegal testified that Gilford was the only loan officer she worked with in connection with the closing of the sale.

Accordingly, in light of the evidence set out above, we conclude that there was sufficient evidence for the jury to find Gilford guilty of residential mortgage fraud beyond a shadow of a doubt. *Jackson v. Virginia*, supra.

2. Gilford contends that the trial court made numerous errors that had a cumulative prejudicial effect on the jury. "This State does not recognize the cumulative error rule." (Punctuation omitted.) *Rogers v. State*, 282 Ga. 659, 668 (11) (653 SE2d 31) (2007). Although Gilford appears to acknowledge this, she nevertheless cites to *Schofield v. Holsey*, 281 Ga. 809, 812 (642 SE2d 56) (2007), claiming that it holds "that each individual error should not be considered in a vacuum and that it is the cumulative prejudice of errors which is constitutionally relevant." *Schofield v. Holsey* applies only to errors associated with ineffective assistance of counsel and clearly states

---

[1] OCGA § 16-2-20 provides:

(a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. (b) A person is concerned in the commission of a crime only if he: (1) Directly commits the crime; (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

that "it remains the case that this State does not recognize the cumulative error rule." (Punctuation omitted.) Id. at 812 (II), n. 1.

3. Gilford claims that the testimony of Officer Peck stating that officers found Gilford under the bed when they went to serve the arrest warrant was erroneously admitted over an objection that his testimony was not relevant. We disagree. Officer Peck's testimony "was part of the res gestae of the arrest, and evidence as to the time when and the place where arrested, the manner of the arrest, and all the circumstances connected with the arrest, are proper matters to be submitted to the jury to be weighed by them for what they are worth." (Punctuation omitted.) *Foster v. State*, 286 Ga. App. 250, 255 (3) (b) (649 SE2d 322) (2007).

*Richardson v. State*, 199 Ga. App. 10 (403 SE2d 877) (1991), relied on by Gilford, is not on point. In *Richardson*, the prosecutor's questions alluding to defendant's hiding under the bed during *prior* arrests impermissibly placed his character in issue. Id. at 11-12. That is not the case here.

4. Next, Gilford claims that the trial court erred in denying her motion to admit the affidavit of the notary for purposes of authenticating a promissory note. Gilford testified that she loaned Smith $13,000 for earnest money to put down on the house. She stated that she drew up a promissory note to that effect and a copy of the note was introduced at trial. The trial court denied Gilford's motion to introduce the affidavit of the notary who notarized the note.

Gilford makes no argument that she was harmed by the trial court's ruling and we find there was no harm. The promissory note was admitted into evidence and there was no objection made to its admission, for lack of authentication or for any other reasons. It is axiomatic that "[h]arm as well as error must be established by an appellant in order to secure a reversal of his conviction." *Rutledge v. State*, 245 Ga. 768, 771 (3) (267 SE2d 199) (1980).

5. Gilford contends that the trial court erred in failing to redact a reference to Gilford in the e-mail from Johnson to Smith about the post-closing unexecuted promissory note. The transcript shows that Gilford's counsel did not object when the State read the e-mail during cross-examination of Johnson, nor did counsel object when the prosecutor questioned Johnson specifically about her reference to Gilford in the e-mail. Defense counsel's only objection was after the close of evidence when she stated that she "would want redacted" any mention of Gilford in the e-mail. Because it was decided that the e-mail would not go out with the jury, there does not appear to be any ruling of the trial court at issue. Accordingly, there is no merit to this enumeration.

6. In her last enumeration, Gilford argues that the trial court erred in failing to declare a mistrial after certain remarks made by

the prosecutor during the State's closing argument. Defense counsel objected to the remarks and the trial court sustained defense counsel's objections. Defense counsel did not request curative instructions and did not make a motion for mistrial.

> [I]t is well-settled that a sustained objection to improper argument of counsel cannot serve as the basis for reversal unless it is contemporaneous with a denied motion for mistrial, denied request to strike or denied request for curative instructions. ... (When) the objection to the State's argument is sustained, the objection will not authorize defense counsel to assert on appeal that the trial court erred in failing to take any *additional, unrequested* curative actions.

(Punctuation omitted; emphasis in original.) *Sams v. State*, 185 Ga. App. 878 (366 SE2d 239) (1988).

*Judgment affirmed. Bernes and Doyle, JJ., concur.*

DECIDED JANUARY 23, 2009 — ▮▮▮▮▮▮

*Ann M. Fitz*, for appellant.

*Thurbert E. Baker*, Attorney General, *Gregory J. Lohmeier*, Assistant Attorney General, for appellee.