**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**October 26, 2021**

# In the Court of Appeals of Georgia

A21A0882. REID v. THE STATE.

PIPKIN, Judge.

A Clayton County jury found Ryan Reid guilty of enticing a child for indecent purposes and aggravated child molestation.[1] Following the trial court's grant of his motion for an out-of-time appeal, Reid challenges his convictions, arguing that the evidence was insufficient, that the trial court erred by refusing to charge the jury on the defense of alibi, and that trial counsel was ineffective in two respects. We affirm.

1. Reid first contends that the evidence adduced at trial was insufficient to sustain his convictions. When we consider the sufficiency of evidence, the defendant "no longer enjoys a presumption of innocence," (Citation and punctuation omitted.) *Miller v. State*, 359 Ga. App. 380, 380 (1) (857 SE2d 830) (2021), and "the relevant

---

[1] The jury acquitted Reid of a second count of aggravated child molestation.

question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt," (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Critically, "[o]ur review leaves to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence." *Yarn v. State*, 305 Ga. 421, 423 (2) (826 SE2d 1) (2019).

Viewed in the appropriate light, the evidence presented at trial showed that Reid was best friends with the father of the victim, T.T., and frequently visited the family's home. T.T. testified that, when she was eleven years old, Reid began making her touch his penis and that he made her perform oral sex on him on multiple occasions. The abuse generally occurred when the rest of the family was asleep.

On one occasion in 2012, when T.T. was twelve years old, Reid accompanied the family to the home of T.T.'s grandfather in Clayton County, where Reid, T.T., and T.T.'s father and brother, among other people, spent the night. T.T. testified that, around 3:00 a.m., she was asleep on a couch in the living room and that her brother and father were asleep in the same room. Reid was also in the room on the floor next to T.T.; T.T. testified that Reid "told [her] to come down" from the couch to the floor

2

with him and, when she did, instructed her to perform oral sex on him. T.T. complied with Reid's instructions.

T.T.'s grandfather testified that he also awoke around 3:00 a.m. that night and went to the kitchen for a drink. When he walked past the living room, he looked in and observed T.T.'s father asleep on a couch and Reid asleep in a chair with T.T. in his lap and his hand on her thigh at her waistline. The grandfather instructed T.T. to go sleep in a bedroom with his other grandchildren, explaining that he did so "[b]ecause based on her age and by [her] being a female, it's inappropriate for her to be in his lap at that late at night." No one else was awake at the time.

T.T. testified that the abuse continued until approximately 2014; she explained that she did not disclose the abuse immediately because she was afraid her father would kill Reid and go to prison as a result. However, T.T.'s mother became concerned when T.T. began experiencing various symptoms, including a racing pulse, and took her to the hospital for testing. While at the hospital, T.T.'s mother noticed T.T.'s relieved reaction when the doctor informed T.T. that she was not pregnant and did not have any sexually transmitted diseases. T.T.'s mother questioned her about her reaction, at which point T.T. disclosed the abuse; T.T.'s mother then informed

3

T.T.'s father about the abuse. T.T.'s father confronted Reid about the abuse, and Reid admitted to having "sexual contact" with T.T.

On appeal, Reid generally challenges the sufficiency of the evidence as to both his convictions on the ground that T.T.'s testimony was inconsistent and uncorroborated. Reid also contends that the evidence presented at trial failed to establish the asportation element required for enticing a child for indecent purposes. We address these arguments in turn.

Reid first asserts that the evidence was insufficient to support his convictions because T.T.'s account of the abuse was, in his estimation, uncorroborated, "impractical," and inconsistent in certain respects with the testimony of other witnesses for the State. Reid's arguments challenge T.T.'s credibility as a witness and the proper weight to afford her testimony, but this Court "does not reweigh evidence or resolve conflicts in testimony." (Citation and punctuation omitted.) *Cox v. State*, 306 Ga. 736, 736 (1) (832 SE2d 354) (2019). Instead, witness credibility is for the jury's determination. See *Yarn*, 305 Ga. at 423 (2). See also OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Miller*, 359 Ga. App. at 383 (victim's testimony alone was sufficient to support convictions for

enticing a child for indecent purposes and child molestation, among other crimes).

Therefore, this contention is without merit.

Turning to Reid's specific challenge to the evidence underlying his conviction for enticing a child for indecent purposes, he asserts that T.T.'s movement from the couch to the floor at his encouragement was insufficient to show asportation because T.T. "moved by her own volition" and because her movement was "minimal in duration" and did not "hide or separate" her, make commission of the abuse "any easier," or "lessen the risk of detection." These arguments are unavailing.

> Under OCGA § 16-6-5 (a) "a person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." The statute has been held to include the element of "asportation," and our Supreme Court has held that this element is satisfied whether the "taking" involves physical force, enticement, or persuasion. Further, *any asportation, however slight, is sufficient to show the taking element* of enticing a child for indecent purposes.

(Emphasis supplied; citations, footnote, and punctuation omitted.) *Whorton v. State*, 318 Ga. App. 885, 887 (1) (a) (735 SE2d 7) (2012). Contrary to Reid's argument, it is well settled that asportation need not be accomplished by force. See *Moore v. State*,

5

319 Ga. App. 696, 698-699 (1) (738 SE2d 140) (2013) ("[W]hile [asportation] can be the result of physical force, it also can be the result of mere persuasion, enticement, or temptation."). Furthermore, a showing of asportation for purposes of OCGA § 16-6-5 (a) is not dependent upon the duration of the child's movement. See *Tudor v. State*, 320 Ga. App. 487, 492-493 (2) (740 SE2d 231) (2013) (rejecting argument that child's movement of short duration was insufficient to establish asportation). Nor does the statutory language mandate a showing that the movement was done in order to hide the subsequent abuse or to make the victim "easier" to abuse; instead, it requires only that the movement have been accomplished "for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a).

Here, evidence that Reid instructed T.T. to move from the couch to the floor so that he could molest her established the slight movement necessary to prove asportation. See *Hicks v. State*, 254 Ga. App. 814, 816 (3) (563 SE2d 897) (2002) (victim's testimony that defendant "kept on trying to pull [her] towards him" satisfied asportation element); *Cimildoro v. State*, 259 Ga. 788, 789 (1) (387 SE2d 335) (1990) (asportation shown where defendant was in a tool shed with the victim and he persuaded her to lie down on a board so that he could molest her). "And [Reid's] actions were sufficient to establish that he acted with the requisite intent at the time

6

he enticed" T.T. to move from the couch to the floor. *Allison v. State*, 356 Ga. App. 256, 263 (2) (b) (846 SE2d 222) (2020) ("[T]he evidence authorized the jury to find that [defendant] enticed the . . . victim to her mother's bedroom with the intention to engage in child molestation as established by his subsequent act of placing the victim's hand on his penis.").

Having reviewed the record, we conclude that the evidence recounted above was sufficient to authorize a rational jury to find Reid guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson*, 443 U. S. at 319 (III) (B); *Becton v. State*, 358 Ga. App. 321, 327 (3) (a) (853 SE2d 125) (2020) (evidence sufficient to support conviction for aggravated child molestation where victim testified that she engaged in oral sex with defendant). Accordingly, this enumeration presents no cause for reversal.

2. Reid next argues that the trial court committed reversible error by denying his request to charge the jury on the defense of alibi. The indictment in this case alleged that the crimes of which Reid was convicted occurred "between the 1st day of June, 2012, and the 30th day of June, 2012, the exact date of the offense being unknown to the Grand Jury." At trial, Reid presented the testimony of his brother in an attempt to establish an alibi defense. Reid's brother testified that Reid traveled to

7

New Jersey on June 14, 2012, and, the next day, was arrested there and jailed until being bonded out early the next week. Reid's brother further testified that Reid returned to Georgia in late June or early July but indicated that he was "not too sure of the exact date" of Reid's return. After extensive consultation with both Reid and the State during the charge conference, the trial court denied Reid's request to charge on alibi, explaining that Reid had not presented evidence "from which it could reasonably be inferred that it was impossible for him to have committed the offense[s]." The trial court's reasoning was sound.

"A requested jury charge must be legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence. If any portion of the request to charge fails in these requirements, denial of the request is proper." (Citation and punctuation omitted.) *Martinez v. State*, 306 Ga. App. 512, 527 (7) (702 SE2d 747) (2010). "The defense of alibi involves the impossibility of the accused's presence at the scene of the offense at the time of its commission. The range of the evidence in respect to time and place must be such as reasonably to exclude the possibility of presence." OCGA § 16-3-40. The testimony of Reid's brother established, at best, that Reid was out of the state from June 14 through the end of the month. There was no evidence showing, however, that Reid was not in Georgia from

June 1 to June 13, 2012. Thus, because the evidence supporting Reid's alibi defense did "not show the impossibility of [his] presence at the crime scene during the crime's commission, the failure of the court to charge the law of alibi is not error."[2] (Citation and punctuation omitted.) *Foster v. State*, 286 Ga. App. 250, 256 (3) (c) (649 SE2d 322) (2007).

3. Reid also contends that trial counsel rendered constitutionally ineffective assistance by failing to object to the admission of certain evidence and by failing to file a special demurrer to the indictment to require the State to allege specific dates on which the charged crimes were committed, which would have better facilitated the presentation of his alibi defense. However, the record shows that these claims of ineffective assistance were not raised in Reid's amended motion for new trial.[3] "[A]

---

[2] Contrary to Reid's assertion on appeal, alibi was not his sole defense at trial. When the trial court asked trial counsel whether alibi was Reid's sole defense during the charge conference, trial counsel responded, "[T]hat is our defense, Your Honor, is that he was not – or that *part of it* is that he was not in the State of Georgia during this time." (Emphasis supplied.) Reid's defense also sought to undermine the credibility of the victim and the other witnesses for the State.

[3] In his amended motion for new trial, Reid raised a single claim of ineffective assistance, which was premised on trial counsel's decision to rely on an alibi defense. Reid argued that trial counsel performed deficiently in this regard because the purported alibi covered only about half of the time period during which the charged crimes occurred, as alleged in the indictment, despite "the law in Georgia as to alibi [being] so clear in its requirement that the alibi evidence cover the entirety of the time

defendant has an obligation to raise all allegations of ineffective assistance at the earliest practicable moment." *Dunn v. State*, 291 Ga. 551, 553-554 (4) (b) (732 SE2d 524) (2012). Because Reid, who was represented by new counsel following his convictions, had the opportunity to raise these claims at the motion for new trial stage but failed to do so, he is barred from asserting them for the first time on appeal. See *Mills v. State*, 319 Ga. App. 131, 137 (2) (735 SE2d 134) (2012) ("Where the issue of trial counsel's effectiveness has been raised on motion for new trial, any claims of ineffective assistance by trial counsel not raised at that time are waived. Such claims unasserted at the trial level are procedurally barred.") (citation and punctuation omitted).

4. Finally, relying on our Supreme Court's decision in *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020), Reid asserts that the cumulative prejudice wrought by the insufficiency of the evidence, the trial court's failure to charge the jury on alibi, and trial counsel's ineffectiveness entitles him to a new trial. However, because we concluded that Reid's single claim of trial court error lacks merit and his ineffective assistance claims are not properly before us, there is no error from which prejudice could accumulate, and, therefore, *Lane* does not apply. See *Woods v. State*,

frame during which the charged crime is alleged to have taken place."

Case No. S21A0862, __ Ga. __ (III) (1) n.7 (__ SE2d __) (Aug. 24, 2021) (*Lane* "announced a new rule regarding the cumulative effect of a combination of certain trial court errors and deficiencies of counsel.") (emphasis omitted). This claim thus fails, and the verdict of the jury shall stand.

*Judgment affirmed. Miller, P. J., and Hodges, J., concur.*