## 71136. STOKER v. THE STATE.
(338 SE2d 525)

DEEN, Presiding Judge.

Claude Stoker brings this appeal from his conviction for aggravated assault resulting from the shooting of Geneva Morgan, with whom Stoker once lived. Stoker and the victimized ex-lover gave somewhat conflicting versions of how their relationship ended with a

bang and not a whimper.

Around 9:00 p.m. on September 12, 1984, Stoker arrived at the victim's house and asked her if he might look for some towels he might have left there when he moved out, and she invited him in. According to the victim, however, Stoker did not look for the towels but instead turned and remarked, "If we can't be together, we can die together." The victim claimed that, fearing Stoker had a gun, she then ran toward the back door. As she reached the threshold and opened the door, she was shot in her shoulder, and the momentum of the bullet instantly propelled her out the door and into the yard. (The bullet deflected off her shoulder blade, travelled up her neck, and lodged itself in her mouth.) Stoker then left the house and got into his car. The victim, bleeding profusely and knowing that she needed immediate medical attention, had to beg Stoker to take her to the hospital, banging on the window of his car until he unlocked the passenger side and let her in. On the way to the hospital, Stoker pulled the gun from his pants pocket, laid it down on the transmission hump, and cautioned her to "tell them it's an accident or I'll shoot you."

Stoker claimed that while at his ex-lover's home in search of towels, he never threatened her or said anything about killing her; rather, he had only remarked that "if we can't live together, we can forget it." Ms. Morgan had then headed for the kitchen, presumably to get them something to drink, and as he started to sit down Stoker accidentally dropped the pistol he happened to have. The gun struck the coffee table and discharged, wounding the victim. Stoker said he then helped her from the kitchen to his car and drove her to the hospital.

One of the doctors who treated the victim testified that it was possible that the gun accidentally discharged after being dropped, thus wounding the victim, but it was highly unlikely, taking into consideration the trajectory of the bullet and the unusual path it travelled through the victim. Further, a police officer investigated the scene less than one hour after the shooting and found no blood in the kitchen or the living room.

On appeal, Stoker contends that the trial court erred by failing to give a jury instruction on circumstantial evidence and by refusing to grant a mistrial when during closing argument the prosecutor improperly referred to the grand jury indictment as evidence of the appellant's guilt. *Held*:

1. OCGA § 24-4-6 provides that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Generally, where a conviction depends entirely upon circumstantial evidence, the court's failure to charge this law is reversible error, even in the absence of a

timely written request. *Jones v. State*, 243 Ga. 584 (255 SE2d 702) (1979). However, even in a case which is wholly dependent on circumstantial evidence, if from the proven facts only one reasonable hypothesis exists, i.e., that the defendant is guilty, then the trial court's failure to give such a jury charge does not constitute reversible error. *Hawes v. State*, 240 Ga. 327 (240 SE2d 833) (1977); accord *Germany v. State*, 235 Ga. 836 (221 SE2d 817) (1976).

In the instant case, the evidence simply failed to present any reasonable hypothesis save that of the appellant's guilt. The evidence showed that it was highly unlikely for the bullet to have entered the victim in the manner claimed by the appellant; and, considering the uncontroverted facts that the victim's wound caused profuse bleeding and there was no blood in the kitchen, the appellant's account that the bullet struck the victim while she was fetching drinks in the kitchen, where she remained for some moments until he escorted her to his car, was patently unreasonable. An hypothesis which is at best merely possible cannot be equated to a reasonable hypothesis.

The essence of this case, of course, was a credibility contest, and the trial court did clearly and adequately charge the jury on the requisite burden of proof and on the jury's function of resolving questions of credibility. Certainly, acquittal could have resulted had the jury accepted the appellant's version or simply rejected the victim's testimony. The omission of the charge on circumstantial evidence could not have affected the jury's credibility determination, and, as indicated above, only one *reasonable* hypothesis was presented by the evidence. Accordingly, the trial court did not commit reversible error in omitting the unrequested charge on circumstantial evidence.

2. During closing argument, the prosecutor remarked to the jury that "the Grand Jury, a jury of citizens of the county, you can look at the names, decided that there was sufficient evidence to send the case on for your consideration, and returned a true bill in this case . . ." Defense counsel objected and moved for mistrial on the basis that the state had improperly referred to the indictment as evidence. Another problem was the presence of a defense counsel's wife on the list of grand jurors.

The trial court reluctantly denied the motion, but did immediately instruct the jury that the indictment "is not evidence, and you are not to consider that as evidence. What the Grand Jury did, who appeared before them, who didn't appear before them, what evidence they had or what evidence they didn't have is of no concern of yours. That indictment is merely the vehicle that is used to get this case before you for your consideration, and you are not to consider the indictment as evidence for any purpose whatsoever, and the Court admonishes counsel for making such statements to the jury." The trial court did not allow the indictment to go out with the jury when

it deliberated. This court has previously held that reversible error occurred where a trial court failed to take prompt corrective measures after the prosecutor essentially argued that the grand jury would not have indicted unless the defendant was guilty. *DeNamur v. State*, 156 Ga. App. 270 (274 SE2d 673) (1980); *Barnum v. State*, 136 Ga. App. 469 (221 SE2d 829) (1975). Assuming arguendo that the state's reference to the grand jury and the indictment in this case was improper, the trial court's prompt corrective measures certainly were sufficient to eliminate the necessity of declaring a mistrial.

*Judgment affirmed. Pope and Beasley, JJ., concur.*

DECIDED DECEMBER 2, 1985.

*Carlton H. Vines*, for appellant.

*David L. Lomenick, Jr., District Attorney, David L. Whitman, David J. Dunn, Jr., Assistant District Attorneys*, for appellee.