### A06A0584. CALLAHAN v. THE STATE.
(634 SE2d 102)

BERNES, Judge.

A Bartow County jury convicted appellant David Callahan of two counts of armed robbery, two counts of possession of a firearm during a crime, and one count of carrying a concealed weapon. He appeals from the trial court's denial of his motion for new trial.

Viewed in the light most favorable to the verdict, the evidence adduced at trial shows that after midnight on November 23, 2002, Callahan, along with his cousin, Christopher Callahan, and their friends, Waymon Bryant and Clence Poe, traveled to the Econo Lodge hotel in Cartersville, where Poe intended to buy marijuana. After Poe had gone to one of the hotel rooms in search of the drugs, Callahan and Bryant exited the vehicle, rushed into a different hotel room and robbed the two victims, Wendy Overeem and Kevin Matheney, at gunpoint. During the robbery, Callahan and Bryant took a Zippo camouflage knife and $3 from Matheney, and $20 from Overeem.

As a struggle ensued between Matheney and the perpetrators, Overeem escaped from the room and called 911 on her cell phone. Callahan and Bryant then ran out of the room and returned to the

vehicle. Poe heard the yelling from a nearby hotel room and saw Overeem running and calling 911 on her cell phone. He also heard Matheney yell that he had been robbed and saw Callahan and Bryant running from the hotel room where the armed robbery occurred. Unable to make his drug purchase, Poe returned to his vehicle and drove Callahan and Bryant away from the scene. After they left the scene, Bryant told Poe that they had "pulled guns out on them folks."[1]

At approximately 1:02 a.m., deputies from the Bartow County Sheriff's Office were in the 911 center when they heard the call of an armed robbery in progress at the Econo Lodge hotel. While en route to the scene, the deputies received a lookout describing the suspects as "two black males, dark clothing in a light-colored passenger car." Within minutes after receiving the lookout, the deputies observed Poe's small, light-colored passenger vehicle pass them and saw that it was occupied by four occupants who appeared to be black and wearing dark clothing.

Poe was driving, Christopher Callahan was seated in the front passenger position and Callahan and Bryant were seated in the back. All four occupants of the vehicle were arrested after the car turned and parked in an apartment complex. Inside the car, police discovered two guns, money, and the victim's knife. At the time of Callahan's arrest, he was wearing a gray sweatshirt which was identified at trial by Matheney and Overeem as the sweatshirt worn by one of the perpetrators during the armed robbery.

Later that day, Overeem was shown four photo lineups and identified Bryant as one of the assailants.[2] Bryant pled guilty to the armed robbery charges prior to trial and testified as a State's witness. He testified that Callahan took Poe's gun from the vehicle and committed the armed robbery with him.

This evidence was sufficient to authorize any rational trier of fact to find Callahan guilty of the crimes as charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Callahan contends several errors combined to deprive him of a fair trial. "[T]his state does not recognize the concept of cumulative error, [and] it is incumbent upon the defendant to show error with regard to each point he raises." (Citation omitted.) *Brinson v. State*, 243 Ga. App. 50, 52 (3) (530 SE2d 798) (2000). Accordingly, we discuss separately each of Callahan's claims in turn.

1. Callahan contends his trial counsel rendered ineffective assistance.

---

[1] Poe was indicted for the armed robbery, but acquitted at trial. He testified to these facts when presenting his defense.

[2] Matheney was unable to identify anyone from the photo lineups.

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.

(Citation and punctuation omitted.) *Brooks v. State*, 273 Ga. App. 691, 694-695 (4) (615 SE2d 829) (2005). "A reviewing court need not address both components if the defendant makes an insufficient showing on one, nor must the components be addressed in any particular order." (Citations and punctuation omitted.) *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991). We will not disturb the trial court's finding as to counsel's effectiveness unless such finding is clearly erroneous. *Rose v. State*, 263 Ga. App. 263, 264 (1) (a) (587 SE2d 326) (2003). Bearing these principles in mind, we review Callahan's ineffective assistance of counsel claims below.

(a) *Counsel's failure to file a motion to suppress.* Callahan first claims that he received ineffective assistance of counsel based on trial counsel's failure to file a motion to suppress evidence seized from Poe's car. "When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation, punctuation and footnote omitted.) *Parker v. State*, 273 Ga. App. 823, 824 (616 SE2d 139) (2005).

Callahan has failed to do so in this case. Citing *Vansant v. State*, 264 Ga. 319 (443 SE2d 474) (1994), he contends the officers lacked an articulable suspicion to stop Poe's vehicle and lacked probable cause to arrest Callahan. Callahan has never asserted a possessory interest in Poe's vehicle or the items seized[3] and therefore, he has not demonstrated that he has standing to contest the admissibility of the seized items. *Robinson v. State*, 208 Ga. App. 528, 529-530 (2) (430 SE2d 830) (1993); *Morgan v. State*, 195 Ga. App. 732, 736 (4) (394 SE2d 639) (1990).

While Callahan may have had standing to contest the admissibility of evidence seized from him, i.e., his sweatshirt, see *State v. Cooper*, 260 Ga. App. 333, 334-335 (579 SE2d 754) (2003), there is evidence in the record which suggests that Poe had voluntarily parked and exited his vehicle prior to the police encounter. Thus, it is not even clear whether Poe's vehicle was "stopped." It is also not clear exactly what facts and circumstances were known to the arresting

---

[3] Evidence at trial showed that the seized guns belong to Poe and Bryant.

officer at the time of Callahan's arrest. There is evidence at trial showing that the arresting officer was radioed information, not contained in the original lookout, regarding the perpetrators, including the fact that one of the perpetrators was wearing a gray sweatshirt. It is not clear when this information was transmitted, but it may have provided additional facts and circumstances establishing probable cause for Callahan's arrest.

"Because no motion to suppress was filed in this case, [the] record was [not] fully developed as to the existence of and the basis for [the officers'] reasonable suspicion to perform the stop[, if any, or for the officer's probable cause to arrest]." *Garrett v. State*, 259 Ga. App. 870, 874 (2) (578 SE2d 460) (2003). The arresting officers were not called to testify at the motion for new trial hearing; their "only testimony as to the [circumstances surrounding the arrest] came during trial where no issue was raised with regard to the validity of the stop [or arrest]." Id. at 874 (2), n. 15. Callahan has not met his burden of showing the damaging evidence would have been suppressed had trial counsel made a motion. Accordingly, this claim of ineffectiveness affords no basis for relief.

(b) *Counsel's failure to object or request a mistrial after the State allegedly withheld discovery of exculpatory evidence.* Prior to trial, Callahan's trial counsel filed a "Motion to Reveal the Deal." The State did not disclose its immunity agreement with Overeem until after trial commenced. Callahan claims that his trial counsel should have objected on *Brady*[4] grounds when the State disclosed the immunity agreement at trial during the voir dire examination and again during Overeem's direct examination. We disagree.

> There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

(Citations and punctuation omitted.) *Floyd v. State*, 263 Ga. App. 42, 43 (587 SE2d 203) (2003). Here, there was no suppression of the impeaching evidence. As previously noted, the prosecutor openly divulged the fact that the two victims, Matheney and Overeem, had been indicted for attempted violation of the Georgia Controlled Substances Act based upon allegations that they had attempted to purchase cocaine from Bryant prior to the incident, and that they

---

[4] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

both had been granted immunity from those drug charges in exchange for their testimony at trial. Compare *Byrd v. Owen*, 272 Ga. 807 (536 SE2d 736) (2000).

*Brady* is not violated when the *Brady* material is available to defendants during trial. *Floyd*, 263 Ga. App. at 43. Although Callahan complains that he should have been expressly informed of the immunity agreement prior to trial, he has made no showing as to anything that his counsel would have done differently or how an earlier disclosure would have affected the outcome of the trial. Callahan has not demonstrated that his trial counsel's failure to object constituted deficient performance or that he was prejudiced thereby.

(c) *Counsel's failure to object to evidence of the victim's pretrial identification.* Next, Callahan contends that his counsel was ineffective in failing to object to evidence of the victim's pretrial identification of him at a calendar call.[5] Callahan argues that the victim's identification was objectionable on the basis that it was inherently suggestive and improperly conducted in his counsel's absence.

Overeem testified at trial that although she had been unable to identify Callahan as one of the perpetrators with certainty upon her prior review of the photo lineup presented by the investigator, she was present for the calendar call of this case, and at that time, had informed her counsel that she recognized Callahan as being one of the perpetrators. The record fails to set forth the complete circumstances surrounding Overeem's identification of Callahan at the calendar call. There is no evidence as to whether Callahan was singled out or conspicuously presented in any way at the time of this identification. The record does reflect that the prosecutor was not present during the identification and that it was not part of any officially orchestrated identification procedure to which the right-to-counsel would apply. Thus, Callahan has failed to establish that his trial counsel's failure to object to Overeem's identification of him at the calendar call constituted deficient performance. See *Prater v. State*, 148 Ga. App. 831, 841-842 (7) (253 SE2d 223) (1979).

Additionally, we note that Callahan has also failed to establish that he was prejudiced by admission of the challenged testimony in light of testimony by both Bryant and Poe identifying him as the perpetrator of the armed robbery. Callahan's claim of ineffective

---

[5] After being informed of Overeem's identification, the assistant district attorney requested that Overeem review a photo lineup again. She then identified the photo of Callahan as one of the perpetrators. Thereafter, in exchange for her testimony at trial, Overeem was given immunity for a pending criminal charge of attempted violation of the Georgia Controlled Substances Act, based on an alleged attempt to buy cocaine from Bryant in the hotel parking lot prior to the armed robbery.

assistance of counsel on this ground fails. See *Lewis v. State*, 249 Ga. App. 488, 491-492 (2) (548 SE2d 457) (2001).

(d) *Counsel's failure to request a mistrial after the State elicited testimony concerning grand jury proceedings.* Callahan claims his trial counsel was ineffective for failing to object to the following colloquy which occurred during the State's questioning of an investigating officer.

> Q: When you went before the grand jury, and I know there's a grand jury secrecy, but did you give all the details that you had about this armed robbery, everything concerning all four even though Chris Callahan's case had been dismissed, did you give that information?
> A: Yes, sir.
> Q: And did the grand jury indict Christopher Callahan after hearing all that you had on him?
> A: No, sir.
> Q: They did indict of course, Mr. Poe, Mr. Bryant and Mr. David Callahan.
> A: Yes, sir.

Callahan contends that this line of questioning created a false impression that the grand jury had already determined that he was guilty. See *Stoker v. State*, 177 Ga. App. 94 (338 SE2d 525) (1985); *DeNamur v. State*, 156 Ga. App. 270 (274 SE2d 673) (1980); *Barnum v. State*, 136 Ga. App. 469 (221 SE2d 829) (1975). As an initial matter, we note that based on trial counsel's testimony at the motion for new trial hearing, the trial court could have reasonably construed trial counsel's failure to object as a matter of trial strategy; trial counsel testified he did not wish to be perceived by the jury as unreasonably objecting. "Trial strategy and tactics do not equate [to] ineffective assistance of counsel." (Footnote omitted.) *Copeland v. State*, 276 Ga. App. 834, 839 (2) (c) (625 SE2d 100) (2005).

Moreover, at *both* the start and the close of the case, the trial court specifically instructed the jury that they were not to infer guilt from the fact that the defendants had been indicted by a grand jury. The fact that the jury did not convict Callahan and Poe on all of the crimes for which they were indicted by the grand jury negates Callahan's claim that the jury found him guilty based on the return of the indictment. Although the prosecutor's line of questioning was not of great relevance, Callahan did not suffer any undue prejudice.[6]

---

[6] According to the prosecutor, the information was relevant to explain why Christopher Callahan was not on trial.

2. Callahan contends the trial court erred in several other respects. To the extent that these claims were preserved by trial counsel's objections at trial, we address each below.

(a) *Trial court's failure to exclude evidence of pretrial identification.* Callahan contends the trial court erred in overruling his objection to Overeem's identification of Callahan as a perpetrator based on a showing at trial of only four individual photographs of the arrested suspects, Callahan, Christopher Callahan, Bryant and Poe. Overeem was also shown these photographs after she informed the prosecutor that she had seen the perpetrator during the previously mentioned calendar call. Callahan contends the presentation was impermissibly suggestive and created a substantial likelihood of irreparable misidentification, particularly in light of Overeem's failure to identify Callahan in photographic lineups shown to her shortly after his arrest.

Even if we were to hold that the display of the photo spread at trial was impermissibly suggestive, as argued by Callahan, we nonetheless find that no harm has been shown. As we stated in Division 1 (c) above, even if Overeem's identifications of Callahan were to be excluded from evidence, the crucial evidence identifying Callahan as the perpetrator of the offenses was presented by the testimony of his accomplice, Bryant, and his friend, Poe.

(b) *Trial court's denial of Callahan's request to record a meeting between the prosecutor and a State's witness.* Callahan contends that the trial court's denial of his request to record a meeting between Bryant, Bryant's father, and the prosecutor violated his "right to due process, confrontation, and the benefit of the rule of sequestration."

During the course of Bryant's direct examination, he expressed a reluctance to testify and at one point stated that he did not want to say anything further. When the jury recessed for a break, the prosecutor announced that Bryant had requested to speak with him. Callahan's trial counsel requested that the conversation be recorded. Although the trial court denied counsel's request, he was allowed to cross-examine Bryant as to the substance of the conversation when the trial proceeded.

More importantly, at the motion for new trial hearing, Callahan's counsel testified that he was present during the conversation between Bryant, Bryant's father, and the prosecutor and that the substance of the conversation did not include any matter which he deemed necessary to bring to the court's attention. Based on the foregoing, we conclude that Callahan's claims are without merit and that he has failed to demonstrate any harm arising from the trial court's ruling. *Head v. State*, 220 Ga. App. 281, 283 (3) (469 SE2d 406) (1996); *Rutledge v. State*, 155 Ga. App. 232 (270 SE2d 396) (1980).

(c) *Trial court's failure to issue curative jury instructions sua sponte after the State elicited testimony concerning the decisions of the grand jury.* For the same reasons explained in Division 1 (d) above, we find no error.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JULY 7, 2006 —

*Vaughan & Evans, Donald C. Evans, Jr.,* for appellant.

*T. Joseph Campbell, District Attorney, Mickey R. Thacker, Assistant District Attorney,* for appellee.