308 Ga. 10
FINAL COPY

S19A1424.  THE STATE v. LANE.

PETERSON, Justice.

Antiwan Lane was convicted of malice murder and other charges for procuring the murder of Ivan Perez.[1] The trial court granted Lane a new trial based on a host of grounds, including evidentiary errors and ineffective assistance of counsel. The State appeals, arguing that none of the claimed errors by counsel or the

---

[1] Perez was shot on December 26, 2011. On December 20, 2012, a DeKalb County grand jury returned an indictment against Lane and Kevin Stallworth. The indictment charged both men with malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony; Lane additionally was charged with criminal solicitation, and Stallworth was charged with possession of a firearm by a convicted felon and a second felony murder count predicated on that offense. In January 2013, Stallworth pleaded guilty to manslaughter and aggravated assault. Lane was found guilty of all charges at an April 2013 jury trial. On April 8, 2013, the trial court sentenced Lane to life without parole for malice murder plus five years in prison (consecutive) for possession of a firearm during the commission of a felony and five years in prison (consecutive) for criminal solicitation. Lane filed a motion for new trial (under an old indictment number) on April 25, 2013; the motion was amended on July 30, 2018. Following an evidentiary hearing, the trial court granted the motion in an order entered on April 25, 2019. The State filed a timely notice of appeal, and the case was docketed to this Court's August 2019 term and orally argued on January 14, 2020.

trial court resulted in sufficient prejudice or harm to require reversal. Given the large number of errors at issue, we first reconsider and overrule our prior precedent that precluded full consideration of the cumulative effect of multiple errors at trial. We then conclude that counsel was ineffective in at least two respects and the trial court made at least one key evidentiary error in overruling a defense objection. Finally, given the combined prejudicial effect of multiple errors by counsel and the trial court, we affirm the grant of a new trial.

The evidence presented at trial showed the following.[2] Perez was shot and killed on December 26, 2011, outside of a DeKalb County apartment complex where he was visiting his cousin, Hector Gonzalez. Testifying at Lane's trial, Kevin Stallworth admitted that he shot Perez, claiming it was a botched murder-for-hire procured by Lane. Stallworth was the State's primary witness, and critical

---

[2] Because this is the State's appeal from the grant of a new trial, and the primary issue before us is the effect of various errors at trial, we do not set forth the evidence in the light most favorable to the jury's verdicts. See *State v. Denson*, 306 Ga. 795, 795 (1) n.1 (833 SE2d 510) (2019).

evidence used to corroborate his testimony was hearsay, much of which the defense did not object to.

Stallworth testified that Lane called him shortly after December 15, 2011, wanting to meet. Stallworth said he was expecting Lane's call based on information that he had received from Stallworth's cousin, Eddie Davis. Stallworth said Lane hired him to kill Gonzalez for $10,000. Stallworth claimed that Lane showed him Gonzalez's Dunwoody apartment, truck, and photo, and gave Stallworth a gun.

Stallworth testified that, on the day of the shooting, he received a ride from Albert Rose to meet with Lane, who provided a BMW for Stallworth to drive. Stallworth then drove to the apartment complex in Dunwoody, where he shot Perez. After the shooting, Stallworth testified, he drove the BMW toward College Park and left it at an apartment complex, then was picked up by Lane. Stallworth testified he and Lane then had "a little scuffle" over payment, resulting in scratches on Stallworth's face, when Lane told him he

3

had shot the wrong person.[3] Stallworth testified that he and Lane met up the following day at Davis's home.

Stallworth's girlfriend, Brittany Thompson, testified that, at some point around Thanksgiving, Stallworth told her that he "was going to hit a lick" and would get $5,000 in return. Thompson testified over the defense's hearsay objection that, on the date of the murder, Stallworth told her, "I'm going to do it. He want me to do it, I'm going to kill him, I'm going to get the money." Thompson also testified over objection that Stallworth told her after the murder that Lane procured the car for him but did not pay him because he shot the wrong person. She testified that she saw scratches on Stallworth's face that night. She also testified that she saw Lane and Stallworth together at Stallworth's cousin's home a couple of days after the shooting and overheard Lane saying that Stallworth "was all good" because a witness had given a description that did not match Stallworth.

---

[3] Stallworth said Lane gave him only $100 — purportedly to rent a hotel room in order to be apart from Davis, Stallworth's cousin.

In addition to Thompson, the State also presented the testimony of Rose, who testified that he gave Stallworth a ride to a hotel the day of the shooting. Lane's girlfriend, Linda Yun, testified that she found $15,000 cash in a plastic bag in her sofa shortly after Lane was arrested.

The lead investigator, Detective Delima, testified extensively at trial. He testified at various points about statements Stallworth made to him. Detective Delima testified without objection that he had an informant in Clayton County who gave him information consistent with the shooting being a murder-for-hire. Detective Delima also testified without objection that other witnesses stated that Stallworth did not have a car and was known as "K." And Detective Delima testified over objection by the defense that Davis "confirm[ed]" Stallworth's statement that Lane initially tried to hire Davis to kill Gonzalez.

The State also tried to corroborate Stallworth's testimony through cell phone data. Cell phone records showed communications between Stallworth's phone and two separate phone numbers listed

5

in Stallworth's cell phone contacts as "D" and "Punkin D." Talking to Detective Delima, Stallworth called Lane "D" and confirmed that "Punkin D" was the same person; Stallworth testified that Lane used to go by the name "Punkin D" and that he just put "D" in his contacts by a new phone number Lane gave him. Other witnesses testified that Lane went by "Punkin" or "Punkin D." Based on a prior incident report, Detective Delima confirmed that the "Punkin D" phone number was associated with Lane, who had the corresponding phone in his possession when he was arrested. But the "D" phone, a prepaid cell phone, was never recovered, and the cellular service provider was unable to provide subscriber information for that phone.

The records showed that someone used the "Punkin D" phone associated with Lane to call Stallworth on December 17, 2011, and again on December 19. The following day, six days before the murder, Stallworth sent that phone text messages saying, "Bra u got da dollar" and "Im on da way." Stallworth's cell phone number had 18 calls between it and the "Punkin D" phone from December 17 to

6

December 20, 2011, and 151 calls between Stallworth's number and the "D" phone from December 20 until December 26, 2011, the day of the shooting. Cell phone data also showed that Stallworth and someone carrying Lane's "Punkin D" phone both arrived in College Park at 1:47 p.m. on the day of the shooting, then Stallworth moved toward Dunwoody at 3:00 p.m., while the "Punkin D" phone moved toward Norcross (where Lane lived) at 3:36 p.m.[4] Although Stallworth lost his cell phone at the scene of the shooting, cell site data showed that, at 8:17 on the night of the shooting, the "Punkin D" phone was pinging off a tower in College Park near the complex where the BMW was left, stayed there until 11:39 p.m., and was pinging near Davis's home the next day.

The State claimed that Lane had a motive to kill Gonzalez because Gonzalez and his wife, Sophia, were interfering with Lane's relationship with Yun, who was friends with Sophia. The State presented evidence that Lane and Sophia had some sort of "dispute" at the Gonzalezes' apartment complex in February 2011, in which

---

[4] A 911 call reporting the shooting was placed at 3:42 p.m.

Lane (1) grabbed her by her jacket; (2) argued with her, Gonzalez, and Gonzalez's brother; and (3) fired a shot into the air. The jury heard about another incident involving Lane, the Gonzalezes, and Yun at a nightclub that year, in which Lane insisted on searching the Gonzalezes' apartment to see if a man was there for Yun, as well as an incident in which Lane once challenged Gonzalez to a fight. And the jury heard that the Gonzalezes had sought multiple protective orders against Lane, including one after the murder. After the Gonzalezes filed for the last protective order, Gonzalez testified, their home was "shot up" by someone Gonzalez believed was sent by Lane. Gonzalez also testified that he had some "concerns" about someone following his wife.

In addition to the evidence of difficulties between Lane and the Gonzalezes, the State also introduced testimony by Joseph Harris, the father of one of Yun's children, who claimed that someone "shot up" his car while he was in it at some point after Lane threatened to kill Harris. Harris testified without objection that the person who shot at his car was wearing a mask but was about the same height

8

as Lane.

The trial court granted Lane's motion for new trial. The trial court found that trial counsel was ineffective for, among other reasons, (1) failing to cross-examine Detective Delima with evidence that he testified falsely about Davis's statements to him, and (2) failing to object to hearsay and bolstering testimony by Detective Delima. In addition, the trial court found that it had erred in various respects, including in admitting Thompson's testimony as to statements by Stallworth. The State has appealed the trial court's grant of the motion for new trial.

1.    Here, the trial court found numerous distinct instances of deficient performance by trial counsel and error by the trial court, and we ultimately agree as to at least two instances of deficient performance by counsel and one trial court error. To date, we have considered the cumulative effect of certain types of errors, in particular counsel's errors that amount to deficient performance — because ineffective assistance of counsel is a federal constitutional claim, and the United States Supreme Court has told us that we

9

must. See *Strickland v. Washington,* 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984) (explaining that reversal on ineffective assistance of counsel grounds "requires showing that counsel's *errors* were so serious as to deprive the defendant of a fair trial" (emphasis added)). But we have said repeatedly that "this State does not recognize the cumulative error rule" — meaning that we do not consider the collective prejudicial effect of multiple errors by the trial court, or the collective prejudicial effect of trial court error and ineffective assistance of counsel. See, e.g., *Grant v. State*, 305 Ga. 170, 179 (5) (h) (824 SE2d 255) (2019); *Bridges v. State*, 268 Ga. 700, 708 (9) (492 SE2d 877) (1997). Given that we agree that trial counsel here was deficient in at least two distinct respects, and that the trial court committed at least one evidentiary error, we consider whether to change our approach to cumulative error. Unable to identify any legal principle — let alone a compelling, reasoned explanation — behind our existing rule, and finding compelling case law from other jurisdictions endorsing cumulative error review, we abandon this prior rule and hold that Georgia courts considering whether a

criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel — at least where those errors by the court and counsel involve evidentiary issues.

It appears that the Georgia rule traces back to a civil case that could not have held anything about the proper standard for granting a new trial in a criminal case. See *Hess Oil & Chem. Corp. v. Nash*, 226 Ga. 706, 709 (177 SE2d 70) (1970) ("Any error shown upon the record must stand or fall on its own merits and is not aided by the accumulative effect of other claims of error." (citation and punctuation omitted)), quoted in *Haas v. State*, 146 Ga. App. 729, 734 (8) (247 SE2d 507) (1978). The decision in that civil case turned primarily on this Court's conclusion that the Court of Appeals had erred in considering a cumulative error claim that was not raised by the appellant. To the extent that our decision in *Hess Oil* stands for the proposition that the cumulative effect of various errors may not be considered, it relied on nothing but an Ohio civil case that since has been overruled. See *Nicholas v. Yellow Cab Co.*, 180 NE2d 279,

11

286 (Ohio Ct. App. 1962), overruled by *Daniels v. Northcoast Anesthesia Providers, Inc.*, 120 NE3d 52, 58 (Ohio Ct. App. 2018). And the prior Ohio rule appears to have been based on the notion that "[t]here is no legal way to add up the separate effects" of multiple trial court errors. See *Richlin v. Gooding Amusement Co.*, 170 NE2d 505, 508 (Ohio Ct. App. 1960). But although consideration of the combined prejudicial effects of different types of errors may sometimes be more challenging than considering errors in isolation, it certainly is not impossible. See, e.g., *United States v. Adams*, 722 F3d 788, 832-833 (6th Cir. 2013) (concluding that combined prejudice of various different evidentiary errors and trial court's handling of issues related to jury's use of transcripts of audio recordings necessitated a new trial); *United States v. Al-Moayad*, 545 F3d 139, 178 (2d Cir. 2008) (vacating convictions based on cumulative effect of various evidentiary errors, as well as trial court's questionable handling of jury instruction issue); *United States v. Hands*, 184 F3d 1322, 1334 (11th Cir. 1999) (concluding that improper admission of evidence was not harmless given the

12

nature of the government's case and additional prejudice created by misconduct by prosecutor in closing argument).

Indeed, what seems particularly difficult, if not impossible, is determining whether a criminal defendant's rights are affected in a material way by a trial court error or deficient performance by counsel without considering what evidence was *properly* before the trier of fact, along with any related jury instructions and arguments by counsel. For example, we affirm convictions despite an erroneous evidentiary ruling where the State shows that it is "highly probable that the error did not contribute to the verdict." *Bannister v. State*, 306 Ga. 289, 301 (5) (b) (830 SE2d 79) (2019) (citation and punctuation omitted). And part of that inquiry involves the strength of the evidence against the defendant. See *Williams v. State*, 302 Ga. 147, 154-155 (3) (805 SE2d 873) (2017).

It would make no sense to say that one trial court error in admitting certain evidence was harmless given the strength of other evidence that was improperly admitted, then say that the error in admitting the second piece of evidence was harmless given the

strength of the first improper evidence. Indeed, weighing prejudice cumulatively is simply a natural implication of the harmless error doctrine:

> The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. The purpose of a cumulative-error analysis is to address that possibility. Such an analysis is an extension of the harmless-error rule, which is used to determine whether an individual error requires reversal.

*United States v. Rivera*, 900 F2d 1462, 1469 (10th Cir. 1990) (citation omitted).[5]

The United States Supreme Court has told us explicitly that we must consider prejudice collectively in the context of ineffective assistance of counsel and *Brady*[6] prosecutorial misconduct claims. See *Kyles v. Whitley*, 514 U.S. 419, 436-437 (115 SCt 1555, 131 LE2d 490) (1995) (explaining *Brady* materiality is defined "in terms of

---

[5] Of course, when we consider the legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), "we consider all of the evidence presented at trial, without regard to whether some of that evidence might have been improperly admitted." *Virger v. State*, 305 Ga. 281, 287 (2) n.3 (824 SE2d 346) (2019) (citation and punctuation omitted). We do not mean to suggest otherwise here.

[6] *Brady v. Maryland*, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

14

suppressed evidence considered collectively, not item by item");
*Strickland*, 466 U.S. at 687; *Schofield v. Holsey*, 281 Ga. 809, 811
(II) n.1 (642 SE2d 56) (2007) (relying on *Strickland* language to
disapprove Court of Appeals holdings that cumulative effect of
counsel's errors should not be considered). And — although not
binding on our consideration of nonconstitutional errors — the
authority from the United States Supreme Court appears to favor a
cumulative error approach even in other contexts. See *Taylor v.
Kentucky*, 436 U.S. 478, 486-488 (98 SCt 1930, 56 LE2d 468) (1978)
(considering defendant's argument about trial court's refusal to give
requested instruction on presumption of innocence in the light of
questionable closing argument by prosecutor); *Chambers v.
Mississippi*, 410 U.S. 284, 290 n.3, 298 (93 SCt 1038, 35 LE2d 297)
(1973) (considering harm caused by trial court's error in refusing to
treat witness as adverse to the defendant in conjunction with trial
court's refusal to permit defendant to call other witnesses); *Berger
v. United States*, 295 U.S. 78, 89 (55 SCt 629, 79 LE 1314) (1935)
(considering "probable cumulative effect" of "persistent" misconduct

by prosecutor).

All of the United States Courts of Appeals explicitly consider the cumulative prejudice of multiple errors at trial. See *United States v. Peña-Santo*, 809 F3d 686, 702 (1st Cir. 2015); *Al-Moayad*, 545 F3d at 178; *United States v. Bailey-Snyder*, 923 F3d 289, 296 (3rd Cir. 2019); *United States v. Hager*, 721 F3d 167, 203 (4th Cir. 2013); *United States v. Labarbera*, 581 F2d 107, 110 (5th Cir. 1978); *Adams*, 722 F3d at 832; *United States v. Marchan*, 935 F3d 540, 549 (7th Cir. 2019); *United States v. Anderson*, 783 F3d 727, 751 (8th Cir. 2015); *United States v. Frederick*, 78 F3d 1370, 1381 (9th Cir. 1996); *Harmon v. Sharp*, 936 F3d 1044, 1083 (10th Cir. 2019); *Hands*, 184 F3d at 1334; *United States v. Brown*, 508 F3d 1066, 1076 (D.C. Cir. 2007).

The approach of the federal courts is instructive here given that they have a similar baseline harmless error doctrine. And our sister states are in accord. See, e.g., *Ex parte Woods*, 789 S2d 941, 942 n.1 (Ala. 2001) (recognizing cumulative error approach based on state statute providing no new trial may be granted unless it should

16

appear that the error complained of has "probably injuriously affected substantial rights" (citation and punctuation omitted)); *State v. Hester*, 324 SW3d 1, 76-77 (Tenn. 2010) (recognizing cumulative error approach based on federal and state constitutional "protection of the right to a fair trial"); *Hurst v. State*, 18 S3d 975, 1015 (Fla. 2009) ("Where multiple errors are found, even if deemed harmless individually, the cumulative effect of such errors may deny to defendant the fair and impartial trial that is the inalienable right of all litigants." (citations and punctuation omitted)).

To its credit, the State candidly has conceded that there is no reason other than stare decisis to retain our current rule. Of course, pursuant to that doctrine, "courts generally stand by their prior decisions, because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Olevik v. State*, 302 Ga. 228, 244 (2) (c) (iv) (806 SE2d 505) (2017) (citation and punctuation omitted). But stare decisis "is not an inexorable command." Id. "To that end, we

17

have developed a test that considers the age of precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning." Id. at 245 (2) (c) (iv) (citation and punctuation omitted).

Here, as explained above, there is essentially no good reasoning for the current rule. Although the rule has been employed by Georgia appellate courts for more than 40 years, the State has articulated no sense in which it has acted in reliance on that rule, and it is difficult to imagine circumstances in which such reliance arises. Finally, to the extent that our existing rule is easier to apply, that is insufficient reason to retain it. We therefore overrule our prior decisions and those of the Court of Appeals that hold that the prejudicial effect of multiple trial court errors may not be considered cumulatively in determining whether a criminal defendant is entitled to a new trial, and we disapprove any decisions with language to that effect; those cases are listed in the Appendix to this

opinion.[7] We hold that the proper approach instead is to consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel.

We note that the only trial court error and deficiencies of counsel that we analyze here involve evidentiary issues. Some other types of error may not allow aggregation by their nature, but that question is not presented here. If a defendant in a future case seeks to argue to the reviewing court that he is entitled to a new trial based on the cumulative effect of errors outside of the evidentiary context, he would do well to explain why the approach that we adopt here should be extended beyond the evidentiary context. And even in the evidentiary context, a defendant who wishes to take advantage of the rule that we adopt today should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple

---

[7] Although the list of cases in the Appendix is rather long, we note that in many of these cases the rule that we adopt today would have made no difference in the outcomes of the cases. See, e.g., *Grant*, 305 Ga. at 179 (5) (h) (rejecting appellant's claim that he was prejudiced by the combined errors of the trial court and circumstantial evidence against him on the basis that "this State does not recognize the cumulative error rule in that context," despite already having rejected all of the appellant's individual claims of trial court error).

19

errors.

2.　Bearing in mind the framework of cumulative harm and prejudice we have adopted here, we next consider the State's argument that the trial court erred in granting a new trial based on ineffective assistance of counsel. We conclude that the trial court properly found that trial counsel performed deficiently in at least two respects.

We review de novo a trial court's grant of a new trial on a special ground involving a question of law. *O'Neal v. State*, 285 Ga. 361, 362-363 (677 SE2d 90) (2009). We defer to a trial court's factual findings in considering a claim of ineffectiveness of counsel, however, unless clearly erroneous. *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015). To prevail on a claim of ineffective assistance of counsel, Lane must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. "To establish deficient performance, an appellant must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of

20

reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in the light of all of the circumstances. *Smith*, 296 Ga. at 733 (2).

(a) The State argues that the trial court erred in finding that counsel performed deficiently for failing to cross-examine Detective Delima with evidence that he testified falsely about Davis's statements to him.[8] As noted above, Detective Delima testified that Davis "confirm[ed]" Stallworth's statement that Lane initially tried to hire Davis to kill Gonzalez. The trial court found that this testimony was false, given that discovery provided to the defense included Detective Delima's report that showed that Davis expressly denied to Delima that he had ever been recruited by Lane to kill anyone. We cannot say that this finding is clearly erroneous on the record before us; indeed, the State has conceded that Detective Delima's testimony on this point was inaccurate.[9] Although the

[8] Detective Delima gave the testimony in question on redirect examination, and defense counsel then elected not to cross-examine Delima further.

[9] This testimony also may have been inadmissible hearsay and a

21

State argues that we must presume the failure to object was strategic given trial counsel's testimony that it is his practice to object when an objection will help his client, trial counsel also testified that he could not recall any strategic reason to forgo confronting Detective Delima with his report. Moreover, "our inquiry is focused on the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Davis v. State*, 306 Ga. 140, 143 (3) (829 SE2d 321) (2019) (citation and punctuation omitted). And neither trial counsel nor the State offered any reason, let alone an objectively reasonable one, for counsel's failure to cross-examine Detective Delima with evidence that one of the State's primary witnesses testified falsely on a significant point. The State has not shown error in the trial court's conclusion that the failure to cross-examine Detective Delima in this fashion was deficient performance.

---

violation of Lane's rights under the Confrontation Clause, but we need not determine that definitively to conclude that counsel should have cross-examined Detective Delima with readily available evidence that his damaging testimony was false.

(b) The trial court also found that counsel was ineffective for failing to object to hearsay and bolstering testimony by Detective Delima, regarding both his unnamed sources and statements by Stallworth. The State has neither contested the trial court's conclusion that this testimony was inadmissible nor posited why a reasonable lawyer would have failed to object, instead arguing that the testimony was harmless because it was cumulative of other evidence, an issue that goes to prejudice. We conclude that the failure to object was objectively unreasonable. The State thus has shown no error in the trial court's conclusion that this amounted to deficient performance.

We thus conclude that the trial court did not err in finding that trial counsel's performance was deficient in at least two respects. Because we have overruled our prior precedent forbidding consideration of the cumulative prejudice of multiple errors at trial, we next consider whether the trial court correctly found that it also

23

erred, before turning to considerations of prejudice.[10]

3.     The State argues that the trial court erred in finding that Thompson's testimony about Stallworth's statements to her was inadmissible. We conclude that the State has not shown that the trial court erred in determining that the testimony should not have been admitted.

Thompson testified that Stallworth told her about his plans to "hit a lick" and kill someone for money. And she testified that, on the night of the murder, Stallworth came home and told her that Lane did not pay him because, according to Lane, "he hit the wrong guy." Defense counsel raised a hearsay objection to Thompson's testimony regarding what Stallworth told her. The State argued that the testimony was admissible, suggesting that Stallworth's statements were excluded from the hearsay rule as statements made

---

[10] We express no opinion on the trial court's other findings of deficient performance, or on whether counsel's ineffectiveness alone is sufficient basis to grant a new trial. Given that we ultimately find that the trial court also made a significant evidentiary error, and that the cumulative prejudicial effect of that error and these two instances of counsel's ineffectiveness warrant a new trial, those are issues we need not address.

during the course and in furtherance of a conspiracy. See OCGA § 24-8-801 (d) (2) (E) (providing that a statement that "is offered against a party" and made by the party's co-conspirator "during the course and in furtherance of the conspiracy, including a statement made during the concealment phase of a conspiracy," is not excluded by the hearsay rule). The trial court overruled the objection. In granting Lane a new trial, however, the trial court concluded that it had improperly admitted that testimony, as Stallworth's statements to Thompson "could not be characterized as 'in furtherance' of the conspiracy by any stretch of the imagination, or precedent"; the trial court also appeared to reject the possibility that they were properly admitted as prior consistent statements.

On appeal, the State argues only that Stallworth's statements to Thompson fell under OCGA § 24-8-801 (d) (2) (E) as statements in furtherance of the conspiracy. But the trial court did not abuse its discretion in rejecting that argument in its order. The trial court's finding that Stallworth's statements were not made in furtherance of the conspiracy is a finding of fact reviewed only for clear error.

25

See *State v. Wilkins*, 302 Ga. 156, 160 (805 SE2d 868) (2017). And a statement that merely "spill[s] the beans," discloses the scheme, or informs the listener of the declarant's activities does not constitute a statement in furtherance of the conspiracy. See id. at 159-160. Here, the statements merely amounted to Stallworth informing Thompson — his girlfriend — what he planned to do, and then telling her about the crime he had committed, including referencing Lane's involvement. The State points to no evidence suggesting that by these statements Stallworth sought to solicit Thompson's assistance in carrying out the scheme or concealing its existence. The State thus has not shown clear error in the trial court's finding, and we cannot conclude that the trial court abused its discretion in concluding that the statements should not have been admitted under OCGA § 24-8-801 (d) (2) (E). See *Wilkins*, 302 Ga. at 156-162 (no abuse of discretion in trial court's exclusion of co-defendant's statements recounting the circumstances of the murders to

witnesses).[11]

4. This conclusion does not by itself warrant a new trial. "Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" OCGA § 24-1-103 (a). In other words, a harmless error does not require reversal of a conviction, and we must consider the harm caused by Thompson's testimony about what Stallworth told her. See *Bannister*, 306 Ga. at 301 (5) (b). But we also now have discarded our prior precedent to the extent that it says the harmful effect of trial court errors may not be considered cumulatively. And we conclude that the combined prejudicial effect of the errors of the trial court and Lane's counsel in this case requires a new trial.

Proceeding to consider the cumulative prejudice of both the

---

[11] We are skeptical of the trial court's apparent conclusion that Stallworth's statements to Thompson were not admissible as prior consistent statements, either. See OCGA § 24-8-801 (d) (1) (A). But the State did not offer the statements at trial on this ground. And it did not identify that conclusion as error — or argue the error — in its brief to this Court, so any claim that the statements were admissible as prior consistent statements is abandoned on appeal. See Supreme Court Rule 22. And given the trial court's conclusion that the statements were improperly admitted hearsay, we need not consider the State's argument that the trial court erred to the extent that it also concluded that Thompson's testimony was improper bolstering.

27

improper admission of Thompson's testimony and the deficient performance of counsel, we bear in mind the relevant standards for the errors at issue. See *Cargle v. Mullin*, 317 F3d 1196, 1220 (10th Cir. 2003) ("[T]he appropriate legal standard for a cumulative-error claim depends on the harmless-error standard that would apply to the constituent errors."); see also *Marchan*, 935 F3d at 549 ("To establish cumulative error a defendant must show that (1) at least two errors were committed in the course of the trial; (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." (citations and punctuation omitted)). Prejudice from ineffective assistance of counsel requires a showing by the defendant of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. And, again, a nonconstitutional trial court error is harmless if the State shows that it is "highly probable that the error did not contribute to the verdict," an inquiry that involves consideration of the other evidence

28

heard by the jury. *Bannister*, 306 Ga. at 301 (5) (b) (citation and punctuation omitted); *Williams*, 302 Ga. at 154-155 (3).

Because here, as discussed below, prejudice or harm has been shown under either of the applicable standards, we need not decide exactly how multiple standards may interact under cumulative review of different types of errors.[12] And in most cases a difference in the standards will not make a difference in the result; the collective effect of the various errors will be sufficiently harmful to warrant a new trial, or not. But in the rare case in which the application of different standards makes a difference in the outcome, the parties should brief the issue of how the standards interact in that particular case.

---

[12] We can think of at least two other standards that might apply to other types of errors. On ordinary review, the State must prove that a constitutional error was harmless beyond a reasonable doubt. See *Stovall v. State*, 287 Ga. 415, 418 (3) (696 SE2d 633) (2010). And certain unpreserved trial court errors are subject to plain error review, under which the defendant must show, among other things, that the error probably affected the outcome below, a standard we have equated with the prejudice prong for an ineffective assistance of counsel claim. See *Hampton v. State*, 302 Ga. 166, 167-169 (2) (805 SE2d 902) (2017) (error in jury charge); see also *Hightower v. State*, 304 Ga. 755, 759 (2) (b) (822 SE2d 273) (2018) (trial court expression of opinion on the facts); *Castillo-Velasquez v. State*, 305 Ga. 644, 652-653 (4) (827 SE2d 257) (2019) (evidentiary error).

Applying this approach in this case, we conclude that the trial court did not err in granting Lane a new trial. The primary evidence against Lane was the testimony of Stallworth, whose credibility inherently was in question given his claimed role as an accomplice. And the properly admitted corroborating evidence was all circumstantial. Thompson's testimony that she overheard Lane reassuring Stallworth does not require an inference that Lane hired Stallworth to carry out the murder. Neither does Yun's testimony that Lane had a significant amount of cash. And although cell phone evidence showing communications between and movements by Lane and Stallworth certainly corroborated some of Stallworth's testimony about Lane, that evidence did not amount to direct evidence showing that Lane asked Stallworth to kill anyone or offered him any money. Moreover, police were not able to confirm, apart from Stallworth's statements, that the "D" phone with which Stallworth exchanged 151 calls in the days leading up to the shooting belonged to Lane. And the jury certainly could have found the cell phone evidence confusing or simply insufficient to show

30

Lane's guilt.

In contrast, the testimony by Thompson recounting what Stallworth told her was clear, powerful, direct evidence confirming Stallworth's basic account that Lane agreed to pay him thousands of dollars to kill someone but ultimately did not pay up because Stallworth shot the wrong person. The State has not shown error in the trial court's ultimate conclusion that this testimony was admitted improperly. By virtue of trial counsel's deficient performance, the jury also heard a detective's testimony that he had confirmed certain details about the crime, including that the shooting was a murder-for-hire, from unnamed sources. And, due to counsel's deficient performance, the detective's false testimony that Stallworth's now-deceased cousin confirmed that Lane initially tried to hire him to kill Gonzalez went unchallenged. We conclude that Lane has shown that, particularly given that key portions of Thompson's testimony were erroneously admitted, there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. Similarly,

31

considering Thompson's erroneously admitted testimony in the light of multiple ways in which counsel also performed deficiently, we cannot say that it is highly probable that Thompson's testimony did not contribute to the verdict. The State has not shown that the trial court erred in granting a new trial.[13]

*Judgment affirmed. All the Justices concur.*

---

[13] Because all of the evidence, viewed in the light most favorable to the verdict, was sufficient to support Lane's convictions, he may be retried by the State if it chooses to do so.

APPENDIX.

We overrule our prior decisions and those of the Court of Appeals that hold that the prejudicial effect of multiple trial court errors may not be considered cumulatively in determining whether a criminal defendant is entitled to a new trial. We also disapprove any decisions with language to that effect. We note that the list set forth below may not be exhaustive.

*Grant v. State*, 305 Ga. 170, 179 (5) (h) (824 SE2d 255) (2019); *Daniels v. State*, 302 Ga. 90, 105 (8) (805 SE2d 80) (2017); *Rivers v. State*, 296 Ga. 396, 405 (12) (768 SE2d 486) (2015); *Woodall v. State*, 294 Ga. 624, 634 (11) (754 SE2d 335) (2014); *Rice v. State*, 292 Ga. 191, 212 (11) (733 SE2d 755) (2012), disapproved on other grounds by *Willis v. State*, 304 Ga. 686, 694 (3) (f) (820 SE2d 640) (2018); *Humphrey v. Lewis*, 291 Ga. 202, 219 (VI) (728 SE2d 603) (2012); *Reese v. State*, 289 Ga. 446, 450-451 (4) (c) (711 SE2d 717) (2011); *Perkins v. Hall*, 288 Ga. 810, 831 (VI) (B) (708 SE2d 335) (2011); *Gear v. State*, 288 Ga. 500, 504 (5) (705 SE2d 632) (2011); *McIlwain v. State*, 287 Ga. 115, 117 (4) (694 SE2d 657) (2010); *Brown v. State*, 285 Ga. 772, 774 (3) (683 SE2d 581) (2009); *Hargett v. State*, 285 Ga. 82, 88 (6) (674 SE2d 261) (2009); *Rogers v. State*, 282 Ga. 659, 668 (11) (653 SE2d 31) (2007); *Waits v. State*, 282 Ga. 1, 5-6 (4) (644 SE2d 127) (2007); *Schofield v. Holsey*, 281 Ga. 809, 811 (II) n.1 (642 SE2d 56) (2007); *Stokes v. State*, 281 Ga. 825, 835 (9) (642 SE2d 82) (2007); *Appling v. State*, 281 Ga. 590, 593 (6) (642 SE2d 37) (2007); *Watson v. State*, 278 Ga. 763, 770 (6) (604 SE2d 804) (2004); *Al-Amin v. State*, 278 Ga. 74, 86 (16) (c) (597 SE2d 332) (2004); *Smith v. State*, 277 Ga. 213, 219 (17) (586 SE2d 639) (2003); *Morrison v. State*, 276 Ga. 829, 834 (5) (583 SE2d 873) (2003); *Head v. Thomason*, 276 Ga.

434, 441 (11) (578 SE2d 426) (2003); *Malaguti v. State*, 273 Ga. 398, 403 (5) (543 SE2d 1) (2001); *Jones v. State*, 273 Ga. 231, 237 (17) (539 SE2d 154) (2000); *Head v. Taylor*, 273 Ga. 69, 70 (2) (538 SE2d 416) (2000); *Laney v. State*, 271 Ga. 194, 198 (11) (515 SE2d 610) (1999); *Bridges v. State*, 268 Ga. 700, 708 (9) (492 SE2d 877) (1997); *Jenkins v. State*, 268 Ga. 468, 471 (3) (491 SE2d 54) (1997), overruled on other grounds by *Hamm v. State*, 294 Ga. 791, 796 (2) & n.7 (756 SE2d 507) (2014); *Mallory v. State*, 261 Ga. 625, 628-629 (4) (409 SE2d 839) (1991), abrogated on other grounds by statute as stated in *State v. Orr*, 305 Ga. 729, 739 (3) (827 SE2d 892) (2019); *Forehand v. State*, 267 Ga. 254, 256 (7) (477 SE2d 560) (1996); *Miller v. State*, 260 Ga. 191, 196-197 (14) (391 SE2d 642) (1990), overruled on other grounds by *Woodard v. State*, 269 Ga. 317, 319 (2) n.14 (496 SE2d 896) (1998); *Dimauro v. State*, 341 Ga. App. 710, 730-731 (8) (801 SE2d 558) (2017); *Young v. State*, 328 Ga. App. 857, 862 (5) n.6 (763 SE2d 137) (2014); *Pruitt v. State*, 323 Ga. App. 689, 693 (3) (747 SE2d 694) (2013); *Jackson v. State*, 302 Ga. App. 412, 416 (1) (691 SE2d 553) (2010); *Moore v. State*, 301 Ga. App. 220, 227 (6) (687 SE2d 259) (2009); *Gilfold v. State*, 295 Ga. App. 651, 654-655 (2) (673 SE2d 40) (2009); *Grier v. State*, 290 Ga. App. 59, 60 (2) n.1 (658 SE2d 827) (2008); *Cail v. State*, 287 Ga. App. 547, 551 (3) (652 SE2d 190) (2007); *Ingram v. State*, 286 Ga. App. 662, 665 (4) (650 SE2d 743) (2007); *Venegas v. State*, 285 Ga. App. 768, 771 (4) (647 SE2d 422) (2007); *Ojemuyiwa v. State*, 285 Ga. App. 617, 622 (5) (647 SE2d 598) (2007); *Johnson v. State*, 283 Ga. App. 524, 532 (8) n.4 (642 SE2d 170) (2007); *Fraser v. State*, 283 Ga. App. 477, 482 (4) (642 SE2d 129) (2007)\*; *Anderson v. State*, 282 Ga. App. 58, 62 (3) (637 SE2d 790) (2006)\*; *Ellis v. State*, 282 Ga. App. 17, 20 (2) (637 SE2d 729) (2006)\*; *Fields v. State*, 281 Ga. App. 733, 737 (2) (637 SE2d 136) (2006)\*; *Hutchens v. State*, 281 Ga. App. 610, 613 (2) (636 SE2d 773) (2006)\*; *Callahan v. State*, 280 Ga. App. 323, 324 (634 SE2d 102) (2006); *Tyler v. State*, 279 Ga. App. 809, 812 (3) (632 SE2d 716) (2006)\*; *Frazier v. State*, 278 Ga. App. 685, 690 (3) (629 SE2d 568) (2006)\*; *Davenport v. State*, 278 Ga. App. 16, 19 (2) (628 SE2d 120) (2006)\*; *Zepp v. State*, 276 Ga. App. 466, 475 (5) (623 SE2d 569)

34

(2005)*; *Fitz v. State*, 275 Ga. App. 817, 824-825 (4) (622 SE2d 46) (2005)*; *Stapp v. State*, 273 Ga. App. 899, 901 n.2 (616 SE2d 215) (2005)*; *Cornelius v. State*, 273 Ga. App. 806, 808 (2) (616 SE2d 148) (2005)*; *Brooks v. State*, 273 Ga. App. 691, 695 (4) (615 SE2d 829) (2005)*; *Garcia v. State*, 271 Ga. App. 794, 797 (2) n.7 (611 SE2d 92) (2005); *Weeks v. State*, 270 Ga. App. 889, 891 (1) (a) (608 SE2d 259) (2004); *Howren v. State*, 271 Ga. App. 55, 58 (5) (608 SE2d 653) (2004)*; *Dixon v. State*, 268 Ga. App. 215, 219 (2) (601 SE2d 748) (2004)*; *Richey v. State*, 261 Ga. App. 720, 726 (4) (583 SE2d 539) (2003); *Pollard v. State*, 260 Ga. App. 540, 542 (2) (580 SE2d 337) (2003); *Hodges v. State*, 260 Ga. App. 483, 487 (5) (580 SE2d 614) (2003)*; *Baker v. State*, 259 Ga. App. 433, 435 (3) (577 SE2d 282) (2003)*; *Phyfer v. State*, 259 Ga. App. 356, 362 (7) (577 SE2d 56) (2003); *Torres v. State*, 258 Ga. App. 393, 395 n.6 (574 SE2d 438) (2002); *Whited v. State*, 258 Ga. App. 195, 200 (8) (573 SE2d 449) (2002)*; *Schwindler v. State*, 254 Ga. App. 579, 590 (13) (563 SE2d 154) (2002); *Burk v. State*, 253 Ga. App. 272, 273-274 (2) (558 SE2d 726) (2001)*; *Holland v. State*, 250 Ga. App. 24, 28 (4) (550 SE2d 433) (2001)*; *Gosnell v. State*, 247 Ga. App. 508, 510 (2) (c) n.13 (544 SE2d 477) (2001); *Choat v. State*, 246 Ga. App. 475, 476 n.1 (540 SE2d 289) (2000); *Brinson v. State*, 243 Ga. App. 50, 52 (3) (530 SE2d 798) (2000); *Osborne v. State*, 239 Ga. App. 308, 309 (1) (521 SE2d 226) (1999)*; *Davis v. State*, 238 Ga. App. 84, 89 (8) (517 SE2d 808) (1999); *Binns v. State*, 237 Ga. App. 719, 720-721 (2) (516 SE2d 583) (1999); *Johnson v. State*, 236 Ga. App. 61, 66 (3) (e) (510 SE2d 918) (1999)*; *Wofford v. State*, 234 Ga. App. 316, 318 (5) (506 SE2d 656) (1998); *Carl v. State*, 234 Ga. App. 61, 65 (2) (g) (506 SE2d 207) (1998)*; *Polk v. State*, 225 Ga. App. 257, 259 (1) (d) (483 SE2d 687) (1997)*; *Davis v. State*, 221 Ga. App. 131, 134 (3) (d) (470 SE2d 520) (1996); *Baugher v. State*, 212 Ga. App. 7, 11 (3) (440 SE2d 768) (1994); *Allen v. State*, 210 Ga. App. 447, 450 (5) (436 SE2d 559) (1993), disapproved on other grounds by *State v. Burns*, 306 Ga. 117, 124 (2) n.3 (829 SE2d 367) (2019); *Thompson v. State*, 201 Ga. App. 646, 649 (5) (411 SE2d 886) (1991); *Nichols v. State*, 200 Ga. App. 297, 299 (3) (407 SE2d 493) (1991); *Dyous v. State*, 195 Ga. App. 99,

100 (3) (392 SE2d 730) (1990); *Stephens v. State*, 185 Ga. App. 825, 826 (3) (366 SE2d 211) (1988); *Fuqua v. State*, 183 Ga. App. 414, 420 (2) (359 SE2d 165) (1987); *Taylor v. State*, 183 Ga. App. 314, 317 (11) (358 SE2d 845) (1987); *Curtis v. State*, 182 Ga. App. 899, 901 (3) (357 SE2d 602) (1987); *Sears v. State*, 182 Ga. App. 480, 484 (11) (356 SE2d 72) (1987), overruled on other grounds by *Johnston v. State*, 213 Ga. App. 579, 580 (445 SE2d 566) (1994); *Eady v. State*, 182 Ga. App. 293, 300 (11) (355 SE2d 778) (1987); *Campbell v. State*, 181 Ga. App. 1, 3 (2) (351 SE2d 209) (1986), disapproved on other grounds by *Coleman v. State*, 271 Ga. 800, 805 (8) (523 SE2d 852) (1999); *Cooper v. State*, 178 Ga. App. 709, 716 (10) (345 SE2d 606) (1986); *Montford v. State*, 168 Ga. App. 394, 397 (6) (309 SE2d 650) (1983); *Veal v. State*, 167 Ga. App. 175, 177 (3) (d) (306 SE2d 667) (1983); *Chappell v. State*, 164 Ga. App. 77, 80 (8) (296 SE2d 629) (1982); *Butler v. State*, 163 Ga. App. 475, 476 (4) (294 SE2d 700) (1982); *Gilstrap v. State*, 162 Ga. App. 841, 848 (12) (292 SE2d 495) (1982); *Sierra v. State*, 155 Ga. App. 198, 201 (270 SE2d 368) (1980); *Suits v. State*, 150 Ga. App. 285, 289 (5) (257 SE2d 306) (1979); *Haas v. State*, 146 Ga. App. 729, 734 (8) (247 SE2d 507) (1978).

\*We disapprove these Court of Appeals cases to the extent that they make the broad pronouncement that Georgia does not recognize the cumulative error doctrine, but they already have been disapproved, explicitly or implicitly, to the extent that they indicate that Georgia courts will not consider the cumulative prejudicial effect of counsel's errors. See *Schofield*, 281 Ga. at 811 (II) n.1.

DECIDED FEBRUARY 10, 2020.
Murder. DeKalb Superior Court. Before Judge Seeliger.

*Sherry Boston, District Attorney, Destiny H. Bryant, Jason M. Rea, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Garland, Samuel & Loeb, Donald F. Samuel*, for appellee.